IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

JAMES ROBINSON

     Plaintiff,                                    NO.

                                                    HON.

CBRE, INC.

     Defendant.

_____

CARLA D. AIKENS, P.L.C
CARLA D. AIKENS (P69530)
AUSTEN J. SEAROUSE (P84852)
Attorneys for Plaintiff
615 Griswold, Suite 709
Detroit, Michigan 48226
844-835-2993
carla@aikenslawfirm.com
austen@aikenslawfirm.com
_____

## **COMPLAINT**

Plaintiff, by and through his attorneys, asserts there is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence

     James Robinson, by and through his attorneys CARLA D. AIKENS, P.L.C.,

submit the following Complaint against CBRE INC. (hereinafter referred to as

"CBRE" or "Defendant").

## JURY DEMAND

COMES NOW PLAINTIFF, James Robinson, and hereby makes his demand for trial by jury.

## JURISDICTION

1.     Plaintiff James Robinson was a resident of Wayne County in the State of Michigan at all times relevant to this action.

2.     Defendant CBRE is a for profit corporation with a registered address of 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170 and conducts regular and systemic business in the State of Michigan.

3.     All relevant actions giving rise to this complaint took place in Wayne County in the State of Michigan.

4.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

5.     This is a suit authorized and instituted pursuant to the Civil Rights Act of 42 U.S.C. § 1983 ("Section 1983"); and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6.     Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

7.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## **FACTUAL ALLEGATIONS**

8.      At all times relevant to this Complaint, Plaintiff was a member of a protected class due to his status as a Black Male.

9.      Mr. Robinson began employment with the Defendant on or about June 11, 2018 as a Senior Project Manager with him primarily working on the Ford account and the Kellogg account.

10.     During the course of his employment, his position became Construction Project Manager.

11.     In November of 2021 Mr. Robinson started on the Kellogg account as the "Project Management Lead" although his title and compensation was still a Sr. Project Manager.

12.     On the first day his manager said "I would've hired you as a Director, but Kellogg would not allow me to do so, I can see you becoming a Director in two years."

13.     The expectation of Mr. Robinson was to run projects 50% of the time and set up a playbook for the other 50% of the time.

14.     Mr. Robinson was part of monthly CBRE leadership calls for the I&L sector where all other attendees are Director level or higher and he was the only Project Manager.

15.     The expectations quickly changed to Director responsibilities on the Kellogg account during the summer of 2022 without proper compensation or title change.

16.     In or around August of 2022, Mr. Robinson began applying for an internal transfer to another position because he felt he was not valued in his current position.

17.     Mr. Robinson also notice several of his less qualified peers receive promotions over him.

18.     Upon finding out about his application for transfer, Mr. Robinson's supervisor stated he was planning to promote Mr. Robinson to the Director position by the end of 2022.

19.     Mr. Robinson was a hybrid worker on the Kellogg account going onsite no more than 3 days a week.

20.     Mr. Robinson resides in Farmington Hills, MI and Kellogg's HQ is in Battle Creek, MI.

21.     This is a 218-mile round trip for Mr. Robinson and it takes him 3.5 to 4 hours to go to and from work.

22.     In December of 2022 Mr. Robinson was made aware that Kellogg wanted him onsite 5 days a week indefinitely and this was non-negotiable.

4

23.     Mr. Robinson said he was unable to honor this request due to the daily commute.

24.     Upon information and belief, Mr. Robinson was the only African American hybrid worker for CBRE on the Kellogg account.

25.     The requirement of being on site 5 days a week only applied to Mr. Robinson and none of the other hybrid employees with shorter travel distances.

26.     Mr. Robinson began taking on the duties of the Director position and was on calls with other Directors at CBRE.

27.     Also, around this time, Mr. Robinson had a performance review where he asked about the status of the promotion.

28.     At this time, Mr. Robinson was told his supervisor had written a negative reviews and Mr. Robinson was being denied for the promotion to Director because of it.

29.     Mr. Robinson was manipulated by his manager to perform Director responsibilities with the understanding he would be promoted to Director.

30.     Mr. Robinson was responsible for developing a PJM Playbook which he successfully completed at the end of Q1 2022.

31.     He stated numerous times to his CBRE manager that Kellogg would ignore his point of view as the SME and disregard him as the account PJM lead.

32.     Further, Kellogg would not follow the playbook he developed and they did not follow their own internal processes.

33.     A Sr. Director was brought in to assist in establishing Mr. Robinson as the lead in the eyes of Kellogg with no success.

34.     Kellogg continuously ignored Mr. Robinson in meetings and began to attack his credibility and blame him for issues with suppliers and vendors outside of his control.

35.     The playbook that was developed has been undermined on two separate occasions with requests to develop new processes and Mr. Robinson has been improperly accused of not following the process he developed.

36.     The negative treatment cause Mr. Robinson to need therapy to deal with the discrimination and toxic work environment received. He started seeing a therapist to deal with mental health issues on January 20th of 2023.

37.     On or about January 26, 2023, Mr. Robinson engaged in a protected activity by reporting discrimination to HR.

38.     Roughly a week later on February 2, 2023, Mr. Robinson was removed from the project he was working on and forced to take a demotion.

39.     On or about March 8, 2023, Defendant posted the Director position that Mr. Robinson was promised.

40.     Upon information and belief, the Director role was given to a person outside of Mr. Robinson's protected class.

41.     On July 26, 2023, Mr. Robinson filed a charge with the Michigan Department of Civil Rights and received the EEOC No. of 471-2023-03317.

42.     A Right to Sue Letter was issued on March 4, 2024 and this lawsuit followed.

## COUNT I
## RETALIATION IN VIOLATION OF 42 USC § 1981

43.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

44.     42 USC § 1981 prohibits individuals from intentionally discriminating and retaliating against persons who engage in protected activity, including reporting and opposing unlawful acts of race discrimination, in the making and enforcement of contracts.

45.     Defendant's discrimination against Plaintiff as described above is in violation of the rights of Plaintiff afforded him by the First Amendment and the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

46.     By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by individuals who do not report discrimination, and those who are non-African American, to the creation,

7

performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

47.     Plaintiff engaged in activity protected by 42 USC § 1981 when he complained of and opposed unlawful racial discrimination.

48.     The retaliation by Defendant that Plaintiff experienced included his demotion and repeated denial of promotion.

49.     The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

50.     As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

51.     But for Defendant's unlawful discrimination against Plaintiff for opposing racial discrimination, Plaintiff would not have suffered damages as set forth herein including his denial of overtime opportunities.

52.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their

future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

53.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

54.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

55.    A respondeat superior relationship existed because agents of Defendants had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

56.    Defendant's conduct, as alleged herein, violated Title VII which makes it unlawful to harass or retaliate against an employee for engaging in protected activity.

57.    Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including, but not limited to when Plaintiff filed complaints with the MDCR and reported discrimination to HR.

58.    Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issue directly to multiple agents of Defendant.

59.     After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts.

60.     Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

61.     Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

62.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

63.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

64.     Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III
## RETALIATION IN VIOLATION OF THE ELCRA

65.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

66.     At all material times, Plaintiff was an employee, and Defendant was his employer covered by, and within the meaning of, the ELCRA.

67.    A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

68.    Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to retaliate against an employee who has engaged in protected activity.

69.    Plaintiff engaged in protected activity, as more fully laid out in the statement of facts, including but not limited to when he filed complaints with the MDCR and reported discrimination to HR.

70.    Defendant, through its agents, had knowledge that Plaintiff engaged in protected behavior because he reported the issues to multiple decision makers and/or agents of the Defendant.

71.    After Plaintiff engaged in protected activity, Defendant's agents thereafter took adverse employment actions against Plaintiff, as alleged in the statement of facts, which included demotion and repeated denial of promotion.

72.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard of Plaintiff's rights.

73.    Plaintiff notified Defendant and its agents of the unwelcomed conduct and communication; however, Defendant failed to remedy the same.

11

74.     As a proximate result of Defendant's discriminatory and retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

75.     As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

76.     Plaintiff requests relief as described in the Prayer for Relief below.

**<u>COUNT IV</u>**
**RETALIATION AND DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")**

77.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

78.     At all material times, Defendant was an employer within the meaning of Title VII, as amended.

79.     At all material times, Plaintiff was an employee within the meaning of Title VII, as amended.

80.     At all material times, Plaintiff identified as an African-American/Black man. As a result, Mr. Robinson is a member of a protected class pursuant to Title VII.

81.     Title VII of the Civil Rights Act of 1964 makes it unlawful to harass or

82.     discriminate against an employee on the basis of that employee's race.

83.    Defendant's conduct, as alleged herein, violated Title VII. Defendant's promotion, performance review, and demotion practices had a discriminatory impact upon African-American/Black employees.

84.    Defendant treated Mr. Robinson's Caucasian contemporary employees better than him and preferred to hire a non-Black candidate for the Director role.

85.    Plaintiff was subjected to offensive communication, bullying and/or other conduct on the basis of his race.

86.    Defendant and its agents' unlawful actions were intentional, willful, malicious and done with reckless disregard for Plaintiff's rights.

87.    As a proximate cause of Defendant's discriminatory actions, Plaintiff suffered past wage loss, future wage loss and earning capacity.

88.    As a proximate cause of Defendant's discriminatory actions, Plaintiff's physical health suffered.

89.    As a proximate cause of Defendant's discriminatory actions, Plaintiff B. suffered humiliation, anxiety, mental anguish, and emotional distress.

90.    As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

91.    Plaintiff requests the relief as described in the Prayer for Relief below.

**COUNT V**
**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE**
**MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et**
**seq. ("ELCRA")**

92.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

93.    At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

94.    Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate against an employee on the basis of that employee's race or skin color.

95.    Plaintiff is an African American man, and, as a result, is a member of a protected class pursuant to ELCRA.

96.    Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class, including but not limited to being demoted, being denied promotion, and other such actions as alleged herein.

97.    Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

98.    The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

14

99.     As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

100.   Plaintiff requests relief as described in the Prayer for Relief below

## **PRAYER FOR RELIEF**

Plaintiff, JAMES ROBINSON, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1.     Compensatory damages in whatever amount to which Plaintiff is entitled;

2.     Exemplary damages in whatever amount which Plaintiff is entitled;

3.     An award of lost wages and the value of fringe benefits, past and future;

4.     An award of interest, costs, and reasonable attorney fees; and

5.     An order awarding whatever other equitable relief appears appropriate at the time of final judgment.


Dated:  May 31, 2024

                                  Respectfully Submitted,

                                  /s/ Austen J. Shearouse
                                  Carla D. Aikens (P69530)
                                  Austen J. Shearouse (P84852)
                                  CARLA D. AIKENS, P.C.
                                  *Attorneys for Plaintiff*

615 Griswold Street, Ste. 709
Detroit, MI 48226
Carla@aikenslawfirm.com
austen@aikenslawfirm.com